OaeutheRS, J.,
delivered the opinion of the Oourt.
Henry E. Steele died intéstate in Eayette county in 1852. Appleberry was appointed his administrator, who died in 1854, before the estate was fully settled up, when Wm. Campbell was appointed administrator de bonis non. He also died, and was succeeded by Stanly Campbell, of whom the plaintiffs in error were sureties in *648 his administration bond, joined -with defendants in error, who are all the distributees of Henry F. Steele, deceased, and were then all of age, in an ex-parte petition to the County Court of Fayette, for the sale of a negro man, slave, for distribution, he being the only slave belonging to the estate. The petition was granted, and the slave sold by Campbell under the decree of the Court, for $1000, of which he failed to distribute about $700, and died insolvent. This action of covenant was instituted in the name of the State, for the benefit of the distributees, upon the administration bond% against his sureties, for the amount not distributed. And the only question is, whether they are liable for that defalcation. The Circuit Judge thought they were, and gave judgment against them, from which they have appealed in error to this Court.
We have heretofore held, when the case was before us upon the suit of Stanly, as successor of Campbell in the administration, that they were not liable to him, upon the ground that neither a prior administrator nor his sureties are liable to a succeeding administrator de bonis non, for things administered. But this is entirely a different question.
It is not easy to see why it was necessary to call in the aid of a Court to make the sale, when all the distribu-tees were of age, and the title was complete in them, and the debts of the estate all paid. There wTere no infants, and a proceeding in Court was not necessary to give the purchaser a good title.
But still that course was adopted, and we have to consider its effect as to the responsibility of the sureties of Campbell for his administration.
*649 We have several times held, that since the act of 1827, the title to slaves passed directly to the distribu-tees of the deceased, subject, only, in the hands of the administrator, to the payment of debts. He has no power to sell them even for that purpose, as he had before that act, but this could only be done by the Courts, so as to divest title out of the distributees. By the act of 1849, this jurisdiction was given to the County Courts concurrently with the Circuit and Chancery Courts. The Court could order the sale to he made by their clerk, he having given a general bond to cover such eases, or by a commissioner, from whom bond and security was required to be taken to secure the fund.
In this case, the decree for sale was made by the County Court, empowering Campbell, the administrator, to make the sale, and pay out the proceeds to those entitled, who are the plaintiffs in this action. Ho bond was ever given by him, and only a part of the proceeds paid out, and the balance lost by his insolvency, as before stated. Upon whom shall the loss fall, is the question now presented.
The bond of his sureties as administrator, only binds them for the faithful performance of his duties in that capacity, not for anything that might be done by him under an appointment by the Court for a different purpose. The sale of the slaves of the estate was not embraced in his functions as administrator, even if sold for distribution. It was not contemplated by his sureties, that any fund would come into his hands of that kind. They knew the law forbid him to convert them into money. If then, the Court by a distinct appointment clothed *650 him with this power, it is exercised in his new character of commissioner, and not administrator. If the Court failed to secure the fund thus to come into his hands under the decree, it is not the fault of his sureties, as administrator, and the loss should not fall upon them.
The present plaintiffs were parties with him in the Court, and should have attended to their interests by demanding the proper bond. They united in the petition for the sale, and upon their prayer he was appointed. They were the real parties to the proceeding, and he, perhaps, entirely an unnecessary party, as there were no debts to pay. The slave was taken out of his hands as administrator, upon that petition, by the Court, and returned to him in his new character of commissioner, to sell. The liability of the defendants then terminated, because he was not acting as administrator.
We think that his Honor erred in holding the plaintiffs in error liable on the administration bond, and reverse the judgment.